Good morning, Your Honor. I think you're going to have to speak up a little bit more. Thank you. I'll get it in there. My name is David Ledger. I represent Americopters and I represent You've got to speak up. You know, you've come a long way. So have I. I'll try. We want to hear each other. My name is David Ledger. I represent Americopters and I represent Jans Helicopter Service. Those are two helicopter operators, both operating on Guam, separate and distinct businesses. Although we have two cases here, I understand that everything has been consolidated. And so the remarks that I prepared just act like we have one case, one case, because otherwise we'll all be we'll be more confused than we already are. Exactly. Actually, that's that's a good point, Your Honor, because as I began to prepare for today's oral presentation, I had second thoughts that one was actually necessary because everything that's before the court in the record, at least in my view, is is very apparent. There's there's very little room for argument. There's been no presentation of these cases on the merits. I've always had this idea and I'm going to judge a long, long time. The like I came to that I came to that conclusion after struggling with what it was that I wanted to bring to the attention of the court. I've come up with at least one thing that I think is very apparent from the record, and I've come up with something else that I don't believe is very apparent. I'll point both of those out. OK, I will. The one thing that's very apparent is that the court of Guam dismissed my client's lawsuits on the basis that the letter from Clarence Kenai and the email from Louis Zigner were, quote unquote, final orders. Therefore jurisdiction rests exclusively with this court. Now, assuming that that decision stands, that leads me to the point that I think is not apparent, but I think is very that's the point that I want to make to the court this morning. If you assume that the district court of Guam ruled correctly, you take that and you add it to in the excerpts of record and the petition for review, if you add the district court's opinion to what is E.R. 13 in the excerpts of records, E.R. 13 is a September 19th, 2002 letter from regional counsel for the FAA, Mr. Monroe Bolton, and he wrote back to me and E.R. 13 is E.R. 13. I have E.R. 13 as your firm's letter back. Let me check. Well, I know what you're asking is you're saying the general counsel's letter, regional counsel's letter. Yes. I got an E.R. 13. That's what you said. So we have E.R. 13 as I have it in my record as a letter from regional counsel for the FAA, Mr. Monroe Bolton. And after we had gone back and forth over the legitimacy and the effect of the Kenai and the Ziegler letter, Mr. Bolton wrote to me on September 19th and he says, this is a final response to your request that the FAA convene hearings. We had repeatedly requested some sort of review of these orders and that request had been repeatedly denied. So he writes and he says, this is a final response to your request that the FAA convene the hearings. Neither Mr. Ziegler's email to the Guam International Airport Authority nor Mr. Kenai's letter to AmeriCopters constitutes an order as that request for hearings are denied. He goes on to say, in any event, neither Mr. Ziegler nor Mr. Kenai were authorized to issue any final orders. If in fact that's what they were, they're invalid because neither one of those gentlemen had any authority to do so. Then he concludes by saying, basically if you're planning on filing what's called a 13.5 action against agents of the FAA to contend that they did something beyond their authority, he basically said, don't bother. So as of September 19th, 2002, the FAA says, the men that did what they did had no authority to do so. In any event, they weren't orders. So going back to what the District Court of Guam ruled, that the Kenai letter and the Ziegler email were in fact orders, if you put that ruling together with the admission here that neither Mr. Ziegler nor Mr. Kenai were authorized to issue those final orders that the District Court of Guam found, what you have is a situation where we asked for 13 CFR 13.2. That's essentially a due process procedure. Before these final orders are issued, there's an administrative procedure that has to be followed. Notice is required. It's undeniable that we didn't get it. There was no notice preceding the Kenai and the Ziegler orders. I want to ask you, right now, are you taking the position that the District Court was right in saying those were final orders, or are you taking the position that they are not final orders? For purposes of the petition for review, we've taken, for purposes of this argument that I'm presenting to the court, on the petition for review, we have to assume that the order from the District Court of Guam was correct. So you're saying, you're here before us. The government, the government said there was a final order in the District Court, even though the council said otherwise, and you're saying you've got a proper appeal before us of a final order. Well, the FAA. I just want to know. The FAA is saying that I know what you mean. Are you saying you're here properly because you took an appeal from final orders of the FAA? Yes, we have a petition for review and an appeal of the District Court decision. Just so we make sure we're talking about which final order. We've got two pieces of paper, one for the airport and one for the steakhouse, okay? Correct. All right. They were two pieces of, we'll just call them pieces of paper right now, from the FAA. Correct. Your position is those are not final orders, is that correct? Or is your position that they are? For the appeal, because we have two matters pending before the court. We have a petition for review. Well, either they are or they aren't as a matter of law, final orders. The District Court ruled that they are. For purposes of... You know, I don't think you can have it both ways. They either are or they are not as a matter of law, final orders, and then we sort it through the jurisdiction. You can't say they're a final order for District Court jurisdiction, but they're not for, you know, direct appeal to the Ninth Circuit. I don't understand how you can have it, how the same order can be two different things. We had no choice because of the position that the FAA put us in. Okay, let me step back and offer something that nobody argued and I'd like your response, but we may or may not want supplemental briefing. They send out this piece, let's take the email. Okay. And as a result of the email, then your client isn't permitted to operate at that airport, is that correct? What's the result of that email? The result of the email was that the airport grounded the aircraft and prevented it from operating. Okay. So they ground the aircraft and you say, wait a second, they did that as a result of an email, we need a hearing. So let's say that the email is not a final order, but what about the FAA's letter that says that this is a final disposition as to your request for hearing and you're not entitled to one? Why wouldn't that be a final order from which you, you didn't have to agree with them, from which you would have to then appeal to the Ninth Circuit? That's an interesting question, which I hadn't focused on, I think. Well, neither had I until I tried to sort out, which is a big colossal mess, which is this case. I think the answer is this, is that the procedure that should have been followed, the administrative procedure that should have been followed is, my client should have received a letter from the FAA that said something along the lines of, we think you're doing something wrong, here's what we think you're doing wrong. Sure, and we know that, but we know they didn't do that. They didn't do any of that. And to this day, they haven't done that, correct? That's right. So the problem with the court's suggestion is, if we came in and said, that's a final disposition, it's not really. It's a final disposition of your request for hearing. Yes. But not of the underlying... No, but this is your big, you haven't really filed your case based on the merits of whether or not you should be grounded. Your case, as I read the complaint, is, they didn't follow their procedures, and one of the things you get at the FAA is, at least you get a hearing on whether they followed their procedures. Oh, I see, I see the point. You see what I'm saying? Yes, I do. So I mean, that's why I think that we're mixing and matching the merits. So let's say, it seems to me your client's biggest glipe, and maybe one that continues to this day, is you didn't even get to talk to the FAA in a formal sense. You never got notice at the outset, and then you never got a hearing to complain about not getting notice, correct? Correct, and that's why we ended up in the District Court of Guam. Okay, so then, the FAA says to you, no ifs, ands, or buts from the general regional counsel, this is a final disposition on your request for a hearing, you don't get one. Why wouldn't that be a final order that should have been appealed on that point, as to whether or not you're entitled to a hearing? Well, there's two answers to that question. Okay, the first answer is, as I said, we believe that the procedure that needed to be followed in order to get a final order to be in front of this court would have been an initial letter, you're doing something wrong, please respond. Then the second step would be, the FAA may say, we disagree with your response, so we're going to issue an order, a directive, telling you to stop what we think. I mean, that's what they normally do, but they didn't do it. They didn't do it. Okay, and then when you get that final order, it also invites the airmen to respond to that. If you disagree with this finding, you have two weeks to do something. So you would avail yourself of that opportunity. And then, of course, the FAA would disagree, and then the next thing you would do is that you would have a trial before an administrative law judge. Okay, here's the question, since it's unclear, why didn't you file both a preventative appeal with the 9th Circuit at the same time you filed in the district court? Because you thought, in other words, the client thought these were final orders because they took action at the airport, and helicopters went out to look for someplace other than the steakhouse roof to land a helicopter. Correct. So they were viewed as having the effect of final orders, correct? Yes. Just factually, when did Americopters stop using the Chuck's Roof? The letter from Clarence Kenai is dated June of 2002. At the time the letter arrived at Americopters, the owner was in the United States looking for a helicopter. He returned to Guam in July, the following month, and ceased. He complied with the order as of July of 2002. I'd like to ask you this question. I have two questions. One is, this whole thing is about four years old now. Is there any kind of relief that you could get that would be effective? Yes, we believe there is. Let me ask you this. Assuming you're right somewhere, what do you want this court to do? What kind of relief do you want this court to give you? Okay, here's, it gets back to the original point that I want to make, is that if you take, if you assume the district court's ruling is correct. I want you to, I want you to tell me. What do you want? What do you want? I need to preface that. Why don't you tell us what you want, and then you can tell us why you want it. Okay, what I, what I, what I want is for the court to act on the petition for review and take these orders under consideration. Now, the difficulty, the difficulty in asking this court to do that is because the FAA didn't follow their procedures, there's not much of a record for this court to review. There's nothing in the record. We need a final order in order to take jurisdiction on a petition for review. You have that from the district court. No, we don't have it from the district court. It's got to be as a matter of law whether, the district court might be wrong. That's possible. You know, I mean, on occasion. That's possible. I mean, I know I say we usually form the district court. See, because You can't rely on the district court for your legal questions. If the court, if this court takes jurisdiction, grants the petition for review, our position is that we have, we have two grounds to come to this court on. Well, I don't know, you're talking about the petition for the review, you've also got an appeal. Yes, we do. All right, let me just say, I decide you win the appeal. It's a, it is a final order, and it comes before us. Comes before this court. All right, and the district court, so it comes before us. What do you want us to order you, the FAA to do, to give you a hearing? That would be a good start, because then we'd be coming to this court with a record. Say the orders are invalid, and if the FAA wants to take any action against you, they must give you a hearing, is that what you want? That would solve one problem, but it wouldn't solve the problem of the damages that we've suffered. Well, I'm not going to give you damages on this record. That's the problem. The reason we don't have a record, Your Honor, is because the FAA denied us the opportunity. Okay, but we wouldn't, let's take the damages and the orders separate. Okay. Well, you've got a big time problem for us to accept this on a petition for review, but that's a whole separate issue, because you're, you know, way too many days out from the 60 days. But let's just say we could figure out a tolling or some kind of situation. All we would have the authority to do is to say that they violated their own process, and you should have a hearing. Correct. But you would never get damages from this court on a petition for review. Do you agree with that? Yes. So, separately, you have a claim for damages potentially in district court, correct? In district court or before an administrative law judge in the administrative procedure, which would be the final, which would have been the ultimate step. You could get damages from an administrative law judge through what? What process? Through what statute? I can't cite the court to the statute, but had the, I believe it's 14 CFR 13.2, okay? We've alleged that violation. I mean, that's totally news to me. I used to do a lot of FAA stuff, so I'm trying to figure out where the damages would come from apart from an alleged constitutional or other violation. Well, that gets, see, that's the difficulty. That gets to the merits of... I'm not asking whether you would ever get them. What would be your legal basis for getting them? I can't, I'm sorry, Your Honor. I can't cite the court to the statute that we believe would entitle us to compensation for the losses that were caused by these illegal orders. My position before the court today is that had we gone through the process and we ended up before an administrative law judge on 13.2 and 13.5, we would have the right to seek compensation for the losses. Okay, well, why don't you do this? We have these little pieces of paper that the clerk has for supplemental citations, and you can put it on there, but if you don't have it on the top of your head or in your notebook, you can submit a letter that just gives us the citation, if you would do that, please. I will. Thank you. And it's a separate issue, again, that the damages issue is a separate issue from are the orders valid, should the orders be rescinded. I understand that. And we certainly want this court to take the petition for review and determine that the FAA's own procedures were not followed, there was no prior notice, and essentially,  I have conceptual difficulty because the position of the FAA is that the orders are invalid to the extent that they were orders, so I'm really kind of puzzled as to what exactly it is we're supposed to review. Well, that's a good point, Your Honor, because in the district court, to obtain dismissal of my client's lawsuits, the FAA ordered, the FAA argued successfully that they were final orders so that they could come here. And now that they've gotten here, in their briefing, they say, well, they weren't final orders, so there's no jurisdiction here either. So where are we supposed to go? Mr. Balton said, you don't have any rights before us. Why don't we do this? You're out of time, and we'll ask the FAA that question. Thank you, Your Honor. All right. All right. My name is Kenneth Kaplan. I represent the United States and the Federal Aviation Administration in this proceeding. Mr. Ledger, on his opening remarks, focused almost exclusively on the substance or the merits of these proceedings and very little on what we believe are the heart of the issues here, which are the jurisdictional issues that are raised here. We believe that there are three solid jurisdictional grounds for this court dismissing these appeals and the petitions for review. The first one, of course, is the issue of whether these were final agency actions that were appealed for. We do not believe that they were. We know that the district court did not agree with our position, and we do not necessarily believe that it's necessary for the court here to focus on whether they were final agency actions or not because we believe that the other two jurisdictional grounds are so clear that it is not necessary to specify. Well, let me just ask you, what position did the FAA take in the district court? In the district court, they took the position that the documents were not final agency actions. The court did not agree and said that they found that they were final agency actions and that they Well, they're not final agency actions. Yes, sir. In the district. You took that position. I don't understand why you never give these people a hearing. It seems to me that this FAA has been playing sure, fast, and loose in this proceeding. With all due respect, Your Honor, I don't agree with that. We believe that the FAA was eminently reasonable and that the actions that the agency took were eminently reasonable, and if I may add You know, they completely said the people from the FAA who ordered these people to cease and desist and not to do what they were doing didn't have any authority. That's a strange statement from and you and them said and you have no right to a hearing. May I? That's a strange administrative proceeding. May I respond to that? Sure, of course. With respect to the Jan's helicopter situation, what is apparent here is simply an e-mail message that went from Inspector Ziegler to the Guam International Aviation Authority, which basically made the comment that it appears that this operator does not have the authority to operate out of Guam because he's operating a foreign registered aircraft. Now, that e-mail message was directed to the Guam International Aviation Authority. It was not directed to Jan's helicopters, and apparently the aviation authority then went to Jan's and said, You can't, we're not going to allow you to use our runways. However, That's the e-mail that said whoever it is, they're not authorized to operate. That's all it said. And apparently what happened was that the airport authority, told Jan's that they couldn't use the airport, the runways. But that decision was apparently rescinded at some point shortly thereafter, and they were allowed to go back to use it. Now, I don't, as a financial matter, know what happened beyond that point, but Mr. Ledger has not made any reference in his opening remarks to suggest that that ever changed. So for a brief period of time, they may not have been able to use the runway. But the more important part, I would say to you, Your Honor, is that subsequently, Mr. Ledger sent a letter to Mr. Bolton, who was the regional counsel, who had the authority to respond to Mr. Ledger's concern about what Inspector Ziegler had done, and he said, don't worry about Mr. Ziegler's letter, because he didn't have the authority to make that statement. But that makes no sense to me, because if the airport relies on the e-mail, and then the FAA says, well, don't worry about the e-mail, it doesn't have the authority, did they report that to the airport? No, I don't believe they did, because I also believe, Your Honor, that previous to that time they had resumed operating because the airport authority allowed them to resume operating eventually. But then Mr. Bolton sends his letter specifically identifying and sending a copy to the airport. It's now stamped August 23, 2002, which says, Jan's Helicopters is not authorized to conduct its present operations out of Guam National Airport. It says two paragraphs later, we're aware the Guam Airport Authority temporarily lifted the restriction, allowing it to operate. However, we are providing a copy of this letter to officials at the airport. So it's not just an e-mail that went astray. Here's a letter consciously sent by the regional counsel to the airport saying that we may have temporarily lifted the restriction, but that's not right, and we're giving this to you, so pay attention to it. I mean, how are we not supposed to think this is meant to mean something? I understand that, Your Honor. What I'm suggesting, however, is that as a result of all that went on with respect to Jan's, that for a short period of time Jan's may have stopped operating from the airport. According to Mr. Bolton's letter, for a short period of time the restriction was lifted and they were allowed to operate, but Mr. Bolton's letter is meant to tell them, don't let that happen again. With all due respect, I don't think that's the interpretation. That was what Mr. Bolton intended. I guess he's saying, however, we are providing a copy of this letter to officials at the airport immediately after observing that they're not authorized to operate and for a while they were allowed. Well, for informational purposes, but certainly the FAA has never taken any action against Jan's. They haven't had to. Guam shut it down. Well, they may have temporarily shut down, but they resumed again, and Mr. Bolton sends them a letter saying that's a mistake. They're not authorized to operate. Yes, they did that, Your Honor, but I don't believe that that constitutes an order within the meaning of what is reviewable in this Court. I would suggest it was for informational purposes. It did not direct them not to allow the operation. Okay. So if I'm a judge and I go wandering down the street and I begin issuing opinions left and right, can I go back later and say, but I didn't really mean it? No, sir. Well, somebody gets a letter, first an e-mail from somebody who's apparently an FAA official, and then a letter or a letterhead signed by regional counsel. In the Jan's case, Mr. Leger further went to the Washington office and raised the same issue with Mr. Horowitz, and Mr. Horowitz wrote back and said essentially the same thing, that this wasn't anything that the agency wasn't requiring anything. Well, Mr. Bolton's letter says Jan's Helicopters is not authorized to conduct its present operations out of Guam and sends a copy of that letter to the airport. What are we supposed to expect is going to happen after that? The airport's not going to let them fly out of there. Well, apparently they did resume operations. Well, before, because the same letter says that for a while this restriction was lifted. However, we are providing a copy of this letter to officials at the airport, which I can read in no other way as meant to say you temporarily lifted the restriction, but now we're giving you this letter, so this is for real. I mean, the problem, out of all of this, let me put a slightly different question to you. When do these people get their day in court? When properly should they have had an opportunity to complain to somebody about being put out of business without a hearing or without a view? Well, first of all, we don't believe that they were put out of business without a hearing. I don't know what you mean. But you know there wasn't a hearing. So you're saying you don't believe they were put out of business. No, sir, not by the government. So that the Guam Airport Authority was acting entirely on its own when they said you couldn't fly out of there, and so this letter with regard to the helicopter pad on top of the steakhouse which says we require you to stop, don't believe a word we say. We're from the government. We're here to help you. Well, again, in that case, Mr. Leger wrote to the Mr. Bolton, and Mr. Bolton gave him the same response, that Inspector Kenai was not authorized to make that determination. So after you received a letter that says, therefore, this office, not just me personally, this office is requiring that your company immediately cease use of the check statehouse rooftop for all flight operations in the United States. They weren't supposed to have paid any attention to that. If I had been Mr. Leger, I would have been concerned. I would have done the same thing. I would have gone to Mr. Bolton. So when do they get their day in court? When do they get a hearing from somebody? Well, Mr. Bolton. He asked for a hearing. He was told, no, you're not getting a hearing. I would not characterize Mr. Bolton's actions in that respect. What Mr. Bolton's letter says, basically, is there's no need for a hearing, because these inspectors didn't have the authority to do what you perceive that they did. Therefore, no harm, no foul. We haven't done anything. We haven't done anything to you. But what happens to the Guam Airport refusing permission to fly? Have you sent something to the Guam Airport saying, never mind, to them? We did not do that. It was just what Mr. Bolton said. But, again, as far as I know, the FAA has not taken any kind of action against Jan's Helicopters or AmeriCopters. Okay. Let me go at it a different way. In your understanding of the FAA statutory structure, would they have any right to claim damages through an administrative process? I am not aware of any administrative process where they can claim damages. Okay. But, and they haven't done that. As far as I know. But they have filed an action in district court. Yes. And it seems to me that, whether they're right or wrong, I don't know, but that their action for damages there would be separate from their claim of no notice in hearing, which would be an appeal, if there were a final order, it would be an appeal to modify or vacate or do something with that final order. So why wouldn't their district court claim for damages remain so that it could go on and figure out if it had any merit? Because I believe under Mace, under the Mace decision, that this is not their seeking. In the district court, they were seeking an appeal from the specific facts of their individual situations and did not constitute a broad challenge to any agency actions, certainly not what was involved in, for example, the Mace case, which was a broad challenge to whether the relocation of airman certificates was appropriate, as an appropriate sanction for violation of the Federal Aviation Regulations. And the district court addressed the Mace. But they said there that in Mace, they said Mace is seeking to recover damages, and that's a remedy not found among the possibilities of affirming, modifying, or setting aside the order complained of. And what they're saying is very similar to Mace. Mace said broadly, well, they don't follow their rules, and they didn't follow them as to me. What they're saying here is, as a result of failure to follow their rules, we've been damaged, and we want to be able to seek our damages. It seems to me that is separate from this whole jurisdictional argument over final order. I'm, again, with all due respect, I would not agree with that. So basically, in your view, they send out these letters. Yes. And then it's like, oh, never mind. And even though the letters were operative for a period of time, they would have no remedy to even see if the letters were properly issued. Well, again, there was, I would suggest that there, nothing, they suffered no consequences. In any fact. Well, wait, you said they suffered no consequences. How do you know that? I mean, they had to move off of the Chuck's Steakhouse rooftop, didn't they? Your Honor, my understanding is that they have been back operating and continue to operate from the rooftop of the restaurant. I don't know when they started, but I'm sorry. Well, do you know the time frame for that? I know that I think back as far as the beginning of last year of 2004. Well, I don't care about 2004. In June, let me just ask you this. Here's the language. You get a letter from the FAA, and this one isn't on e-mail, so leaving aside what the e-mail means, this is like on big DOT stationary, and the guy says, this office is requiring that your company immediately cease use of the rooftop for all flight operations. How would you interpret that? Well, if I read on in the letter, you see that he also refers to the advisory circuit as being advisory. I'm not. This AC is advisory in nature. However, this office feels, and the therefore this office is requiring comes afterwards, so the advisory stuff is waved away. He's got two sentences, and then he says, this office is requiring that you get off the rooftop. You know, it's like Santa Claus. You cannot land at Chuck's Steakhouse anymore. That's what it says. That's what it says. So I don't know how they would interpret it other than I can't land at Chuck's Steakhouse. Well, they may have stopped for a while. They did stop for a while. My understanding is it was stopped, but all I do know is that they have resumed, and the FAA again is taking no action. But you don't get the response from FAA counsel until September of that year, correct? Correct. And did FAA counsel say you can operate from the rooftop? No, they just said that the inspector and I had no authority to issue the order. So you're sort of in this conundrum. I don't know what I would do if I were the lawyer for AmeriCopters. If they tell you that you can't land, then the FAA counsel says, well, you didn't really have any authority. But the FAA counsel doesn't say you can land. May I respond to that? Yeah. Well, what would you do if you were counsel for these parties? Well, you wouldn't wait from that was June or July. You wouldn't wait until I think it was December to file the lawsuit in district court, and you certainly wouldn't wait until 2004 to file the petitions for abuse. You'd take action a lot sooner than that. And now we're going to take action in the district court, I believe that the only proper course of action would have been to have filed petitions for review in this court within 60 days. You've already told us there's no final order. And there was never a final order. Well, Your Honor, I agree that that's the position we took, that there weren't final orders. But if there weren't final orders, then they weren't right for review in any court. But you can do damage. The point of this is that it's entirely different facts. Get rid of these facts. An FAA inspector goes out and does damage by issuing all sorts of orders he's not authorized to issue. And the agency takes its ever-loving time straightening it out. But two years later, finally does straighten it out. So you've got a claim for damages for that two years. Now, there may be lots of defenses to that claim for damages. But surely one of the defenses is not there was never a final order. Because final order or not, there's a whole row of damage that's left behind what the elephant has done walking through the field. So why can't the plaintiff make a claim, I've been injured, which I think unquestionably in some fashion it has been, for having been shut down for some period of time. It's the government's fault because we were shut down because of what the government inspector said, and proceed from there in the district court with a claim against the government. We don't believe that's the proper course of action. Why not? Wait, let's just stop right there. If he comes to this court of appeals, there's no remedy if you're right that it's not a final order. That's correct. And then now you're saying in response to Judge Clifton, we can't go to the district court either. Because the exclusive jurisdiction lies to review these actions to the extent they're final. They're not final orders of misconduct by a government official. Are you saying the government can only act through final orders? I mean, I think that's fiction. Because plainly you know if an inspector says shut down and they shut down and then the agent says don't have authority, well, something has happened in the meantime. It's not like you can go back and pretend that what was said didn't happen. But in this case, Mr. Locher did go to Mr. Bolton and did challenge those two actions. And Mr. Bolton said they were not authorized. First letter from Mr. Bolton, which I've read to you at least twice, said, but you're not authorized and we're sending this to the airport. But that, I believe, was the office letter. That was not his final order. So at a minimum, you've got the gap in time between June and September when they were shut down at the FAA's insistence based on communications between the FAA and the Guam Airport Authority. Now, where it is, and again, I'm trying to get out of these particular facts because there might be other defenses, but there has to be some place an aggrieved party can go to. It won't be the Court of Appeals because there is no final order of the agency. But can't you proceed with a claim against the government? In this case, you can if an FAA truck driver rammed through a gate and knocked over your house. Well, then we're talking about the Federal Tort Claims Act. And we're certainly – I don't believe that to the extent that there are any damages that are available to the petitioners, in this case, that they would be heard under the Tort Claims Act. I may be wrong on that, but I think it would have to lie somewhere else. I don't believe it's the Tort Claims Act. Well, it wouldn't be the Tucker Act. The Tucker? Well, it wouldn't be the Tucker Act, likely. It's basically a constant – it's a Bivens claim. Perhaps. Where do you bring a Bivens claim? I'm sorry? Where do you bring a Bivens claim? Just – Okay. Thank you. Thank you. You're out of time, but you have one minute. We weigh over with him as well. Thank you, Your Honor. As a result of our questions. First of all, there's been a – there's been one mistake presented to the Court. When I received Mr. Bolton's letter on September 19th, 2002, I went to the district court four days later. My lawsuits were filed on September 23rd, 2002. We didn't wait until December. We didn't wait around for anything. The other thing I want to point out is that when the district court heard the government's motion to dismiss, they asked Mr. Kaplan a question. They said, let me ask you something, Mr. Kaplan. Let's suppose this outfit had chosen to violate Bolton's letter and whatever other direction they were given. That's not a final order by the FAA. But let's suppose that they did. What would happen, Mr. Kaplan, if they chose to violate the court? Yes, Mr. Kaplan. Then they would act at their peril, certainly because the government, the FAA, could take appropriate action to seek either compliance through perhaps a cease and desist or perhaps seek enforcement action to take punitive actions either through certificate action or civil penalty. Thank you. We have your points from both counsel in mind. It's a complicated case, and that's why we have a lot of questions for you, obviously. Appreciate that, Your Honor. It's a very unusual case. Thank you, Your Honor. So thank you, both counsel, for your argument. Americopters v. the FAA is submitted.
judges: Bright, McKeown, Clifton